# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Daniel L. Frost,**
**Petitioner Below, Petitioner**

vs) **No. 14-0841** (Kanawha County 14-AA-49)

**Bluefield State College and the**
**Bluefield State College Board of Governors,**
**Respondents Below, Respondents**

**FILED**

June 12, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Daniel L. Frost, by counsel Derrick W. Lefler, appeals the order of the Circuit Court of Kanawha County, entered July 24, 2014, that affirmed the final order of the West Virginia Public Employees Grievance Board which denied petitioner's grievance against Respondents Bluefield State College and the Bluefield State College Board of Governors. Respondents, by counsel Kristi A. McWhirter, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

From 1995 to 2001, petitioner was employed by Bluefield State College (the "College") on a full time basis as a painter, a trades worker, or a trades worker lead. Since 2001, petitioner has been employed at the College as a Counselor II. Petitioner is also a licensed master plumber and master electrician, and holds certifications in HVAC, welding, and insulation. Petitioner also holds a Master of Arts Degree in Strategic Leadership and has his own construction company that specializes in kitchen and bathroom remodeling.

Petitioner claims he has a tense relationship with the College's administration in general, and with Shelia Johnson, the College's Vice President for Financial and Administrative Affairs, in particular, given that he has filed several successful grievances against the College. For example, in 1997, petitioner successfully asserted that he was misclassified as a "trades worker" when he was, in fact, a "trades worker lead." Petitioner asserts he was also active in assisting other employees with their grievances, was openly and vocally critical of the College's practices in a number of areas, and successfully challenged the College's failure to fully fund classified positions in accordance with the "Mercer Classification System."

In 2007, the position of physical plant director at the College became vacant upon the retirement of Clyde Harrison, who had served in that position for twenty years. The College did

1

not post the position. Instead, Sheila Johnson contracted with Mr. Harrison to handle some of his former duties on a part-time basis and delegated other duties to Mr. Harrison's former administrative assistant.

On May 7, 2007, petitioner filed a grievance regarding the College's failure to post the physical plant director position. Three years and considerable litigation later, the College was required to post and fill the physical plant director position. The job description was posted in September of 2010.[1] To apply for the position, applicants were required to complete the College's employment application and to submit a cover letter, resume, three professional references, and transcripts. Petitioner submitted a resume for the physical plant director position, but did not submit a cover letter, transcripts, or the College's employment application. Although not required to do so, Christina Brogdon, then the College's Human Resources Director, gave petitioner an opportunity to submit the missing materials. Petitioner claims that the College already had the missing materials in his employee file, but he nevertheless submitted the requested information.

Ms. Johnson served as both the hiring manager and supervisor for the physical plant director job. In that position, she nominated the five members of the hiring committee including the committee's chair, who were then approved by the College's President. The hiring committee included the chair, Dr. Steve Bourne, then the College's Dean of the College of Business; and members Paul Rutherford, the College's Purchasing Director; James Crenshaw, the College's Supervisor of Campus Services; Roger Owensbee, Assistant Professor Mining Engineering at the

---

[1] The posting listed the qualifications for the physical plant director position as a bachelor's degree in business, public administration, industrial engineering, or a related field; and four to six years of experience performing and directing the work of a physical plant, commercial construction staff or related personnel. The physical plant director was to be responsible for:

> (1) the College's entire maintenance program, including the oversight of campus facilities, structures, HVAC systems, equipment, fleet services, grounds, and emergency management;
>
> (2) the day-to-day operations of the physical plant, including the oversight of the efficient operation of building maintenance, campus grounds, energy initiatives, campus safety and compliance;
>
> (3) assisting with short-term and long-term facilities planning, capital projects, and the oversight of such projects;
>
> (4) the management of the fiscal and personnel resources for the Physical Plant department; and
>
> (5) the supervision of approximately twenty-five employees.

College; and Dr. Tracey Anderson, the College's Director of Institutional Research and Effectiveness. Two of the members of the hiring committee, Paul Rutherford and James Crenshaw, were directly supervised in their jobs by Ms. Johnson.

On November 1, 2010, Ms. Johnson met with the hiring committee to discuss the committee's guidelines and procedures. However, she did not attend any of the hiring committee's other meetings, nor did she participate in the evaluation of the individual applicants.

Petitioner was one of fourteen people who (1) applied for the physical plant director position, and (2) were found to be, at least, minimally qualified to hold the position. The hiring committee reviewed the applications of these fourteen and chose to interview four. Petitioner was not one of the four applicants selected for an interview.

Ultimately, the hiring committee recommended that applicant Brian Bales be hired as the physical plant director. Mr. Bales had twenty-two years of related experience, which included seven years as the facilities manager at a regional community hospital. In that position, Mr. Bales supervised sixteen employees; planned and directed the hospital's facilities department; oversaw plant operations, security, and environmental services; and maintained the budget for the hospital's facilities and utilities departments. Prior to his employment as a facilities manager, Mr. Bales worked as a service technician for a national food chain. In that position he maintained facilities and repaired mechanical equipment. Mr. Bales holds a diploma from Virginia Highlands Community College in HVAC/Electrical, but does not hold a bachelor's degree. Therefore, in accordance with various policies and State regulations, four years of Mr. Bale's relevant experience was substituted for the bachelors' degree required in the job posting for the physical plant director.

On December 15, 2010, petitioner filed a grievance in which he claimed that the hiring committee's decision not to interview him was retaliatory and driven by the College's desire to keep him from a position of significant authority that was under the direction of Ms. Johnson.

In 2013, a two-day evidentiary hearing was held on the merits of petitioner's grievance. On January 29, 2014, the grievance board denied petitioner's grievance. The grievance board found that petitioner had proven a prima facie case of retaliation; however, it concluded that respondents' evidence showed that the hiring committee's decision not to interview petitioner for the physical plant director position was based upon legitimate, non-retaliatory reasons that related to the qualifications of each applicant. The grievance board also found that although the successful candidate, Brian Bales, did not hold a college degree as required by the physical plant director job posting, his twenty plus years in health facilities' management served as a substitute for a college degree.[2]

Petitioner appealed the grievance board's decision to the circuit court. By order entered July 25, 2014, the circuit court found that petitioner had established a prima facie case of retaliation based on his evidence that (1) he initiated multiple grievances against respondents

---

[2] This finding was incorrect. Although Mr. Bales had worked for more than twenty years in health facilities, only seven of those years were in management.

which he successfully pursued in circuit court; (2) Ms. Johnson, who had extensive involvement in these grievances, appointed the hiring committee who decided not to interview petitioner; (3) the decision not to interview petitioner ensured his non-selection for the job; and (4) the decision not to interview petitioner was made after the resolution of his grievance that resulted in the posting of the physical plant director position. Despite these findings, the circuit court affirmed the grievance board's order denying petitioner's grievance on the ground that he failed to carry his burden of proof that respondents had a pretextual basis for denying petitioner an interview. Specifically, the circuit court found that (1) the hiring committee made an independent review of the fourteen minimally qualified applicants and selected the four interviewees based on their relevant experience and qualifications; and (2) petitioner entered no credible evidence before the grievance board that the members of the hiring committee knew about petitioner's grievances or had been instructed to exclude petitioner from the interview process.

Petitioner now appeals the circuit court's order. We review such appeals under the following standard of review.

> "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. pt. 1, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

Syl. Pt. 1, *Shanklin v. Bd. of Educ. of Cnty. of Kanawha*, 228 W.Va. 374, 375, 719 S.E.2d 844, 845 (2011).

Petitioner raises three assignments of error on appeal. Petitioner first argues that both the grievance board and the circuit court erred in finding that respondents made a prima facie case that they had legitimate, non-retaliatory reasons for failing to interview petitioner for the physical plant director position.

The evidence in the record on appeal supports the grievance board's and the circuit court's finding that the hiring committee's selection decisions were based solely upon the qualifications of the applicants as they related to the job description for the physical plant director position. That evidence includes the fourteen applications at issue in this appeal which show that the four applicants selected for an interview (1) had direct, full-time experience working in or managing physical plants and/or health care facilities, commercial construction companies, higher education institutions, or towns; (2) had supervised, evaluated and managed large numbers of employees; and (3) had experience managing and controlling large budgets. Conversely, at the time petitioner applied for the physical plant director position, he had been working for more than a decade in a non-supervisory, non-management position. Moreover, he did not have any direct experience supervising large numbers of employees, let alone physical plant or facilities employees. Petitioner had also never managed a large budget. Finally, his

4

commercial construction experience was limited to his company, which focused solely on kitchen and bathroom remodeling.

The evidence in the record on appeal also includes the testimony of four of the five members of the hiring committee: Dr. Bourne, Mr. Crenshaw, Mr. Rutherford, and Dr. Anderson. Each testified (1) that the sole focus of their work was to select the best applicant for the job, and (2) that they chose the interviewees based solely on the relevance of their education and experience in light of the requirements of the physical plant director position. Therefore, based on the record on appeal and the circuit court's detailed findings in the order on appeal, we cannot say that the circuit court erred in finding that respondents made a prima facie case that they had legitimate, non-retaliatory reasons for opting not to interview petitioner for the physical plant director position.

Petitioner next argues that the circuit court erred in affirming the grievance board where the grievance board failed to consider petitioner's evidence regarding respondents' alleged actions to deter him from applying for other positions. In support of this argument, petitioner highlights the testimony of Ms. Johnson, Ms. Brogdon (formerly the College's Human Resources Director), and Mr. Harrison (the former physical plant director) at the grievance board hearing. In the order of appeal, the circuit court properly considered all of the evidence relevant to the alleged bias by administrators at the College, including the testimony of Ms. Johnson, Ms. Brogdon, and Mr. Harrison. With regard to petitioner's claims that Ms. Johnson unfairly influenced the hiring committee's decision, the circuit court found that her exposure to the hiring committee was relatively minimal given that she attended only the hiring committee's initial meeting which related to the interview selection process, and not to the individual applicants. Further, none of the four hiring committee members who testified at the grievance board hearing said that they were aware of any bias against petitioner on Ms. Johnson's part or on the part of any other administrator at the College. Nor did any hiring committee member claim to be aware of any other jobs petitioner may have applied for at the College. In light of this evidence, we find the circuit court did not err in finding that petitioner failed to prove that any alleged bias on the part of the College's administrators had any impact on the decisions made by the hiring committee.

Petitioner's third and final assignment of error is that the circuit court erred in affirming the denial of petitioner's grievance where the grievance board erroneously found that Mr. Bales's had twenty years of experience in health facilities management, when, in fact, he only had seven years of management experience. Although the grievance board did err in finding that Mr. Bales had twenty years of management experience, we concur with the circuit court's finding that this minor error did not affect the validity of the grievance board's decision in this matter. The question here involves the manner in which the interviewees were selected. On appeal, petitioner does not claim that the hiring committee misunderstood the number of years Mr. Bales served in a management position. Thus, we find this assignment of error to be without merit.

Having reviewed the circuit court's "Final Order" entered July 24, 2014, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 12, 2015

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

**DISQUALIFIED**:

Chief Justice Margaret L. Workman

FILED

2014 JUN 4 PM 3: 11

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**DANIEL L. FROST,**
*Petitioner/Grievant below,*

v.

**Civil Action No. 14-AA-49**
**Judge Tod J. Kaufman**

**BLUEFIELD STATE COLLEGE**
**BOARD OF GOVERNORS/**
**BLUEFIELD STATE COLLEGE,**
*Respondent.*

## FINAL ORDER

Before the Court is the Petitioner's *Petition for Appeal* filed on March 4, 2014, alleging that the West Virginia Public Employees Grievance Board (hereinafter "Board") erred in its decision of January 29, 2014, specifically alleging that the Administrative Law Judge:

1. Failed to consider evidence of actions on the part of Bluefield State College Administration on other occasions specifically intended to thwart petitioner's pursuit of other positions.

2. Failed to correctly and adequately credit and consider the work experience of the intervenor Brian Bales, the successful applicant for the position at issue.

3. Erred in finding that Grievant had not been retaliated against.

4. Erred in finding that the actions of Respondent were not arbitrary and capricious or inherently unreasonable.

5. Erred in denying the Grievant's grievance.

## FACTUAL AND PROCEDURAL HISTORY

1. Grievant is currently employed by Bluefield State College ("BSC") as a Counselor II in the Counseling Center.

1

2. Grievant was hired as a Painter in the Physical Plant in 1995. Subsequently, he was upgraded to a Trades Worker in 1997.

3. At an unspecified date in or about 1998 or 1999, Grievant filed a grievance asserting that he should be a Trades Worker Lead. Grievant was thereafter upgraded to Trades Worker Lead and subsequently moved to Veterans Upward Bound in September 2000.

4. In 2002, Grievant became an Equal Employment Counselor. In 2005, he was upgraded to a Student Services Specialist. He was subsequently moved to a Counselor II position after the Veterans Upward Bound program was eliminated.

5. Since 1996, Grievant has owned and operate a home improvement business as an independent contractor, and has worked as a subcontractor on various commercial projects.

6. Grievant is a United States Navy veteran with a Regent's bachelor's degree from BSC and a master's degree in science and strategic leadership from Mountain State University.

7. Grievant holds licenses as a Master Electrician and Master Plumber, and is certified in welding. He is also licensed to work with CFC and mobile air conditioning.

8. Sheila Johnson is BSC's Vice-President of Financial and Administrative Affairs. She has served in this capacity for approximately 16 years. The Physical Plant is part of her responsibilities, and the Director of the Physical Plant has historically reported directly to Ms. Johnson.

2

9.     Clyde Harrison is currently employed as a security guard at Tazewell Hospital. He was previously employed by BSC as the Director of the Physical Plant for approximately 20 years.

10.     In 2007, Ms. Harrison retired from his position as the full-time Director of the Physical Plant. Immediately upon retirement, he returned to the Physical Plant Director's position on a part-time basis. Ms. Johnson believed this arrangement would save money for BSC, and Mr. Harrison agreed to perform the work on this basis.

11.     On May 7, 2007, Grievant filed a grievance seeking to have the Physical Plant Director's position posted, and obtain other relief. *See Frost v. Bluefield State College*, Docket No. 07-HE-349 (June 13, 2008). This grievance was denied as untimely filed in a decision by an Administrative Law Judge for the West Virginia Public Employees Grievance Board on June 13, 2008.

12.     The Grievance Board decision described in Finding of Fact Number 11, above, was subsequently reversed by the Circuit Court of Kanawha County, West Virginia and the matter remanded for further proceedings. *See Frost v. Bluefield State College*, Docket No. 07-HE-349R (Feb. 11, 2009).

13.     On February 11, 2009, an Administrative Law Judge for the Board issued a decision, in this same grievance, finding that Grievant could not challenge BSC's failure or refusal to post the Director of the Physical Plant because the Grievant lacked standing. *Id.*

14.     On January 13, 2010, the Circuit Court of Mercer County, West Virginia issued a Final Order Revering and Remanding the decision of the Board described in Finding of Fact No. 13, above, that Grievance lacked "standing" to grieve BSC's failure or refusal to post the position of Director of the Physical Plant.

3

15. On May 27, 2010, and Administrative Law Judge for the Board issued a decision, in a grievance filed by Grievant, ordering BSC to post the position of Director of the Physical Plant.

16. BSC posted and advertised the position of Director of the Physical Plant on or about September 19, 2010.

17. On October 7, 2010, Ms. Johnson, in her role as the immediate supervisor over the position to be filled, recommended the appointment of Dr. Steve Bourne, Roger Owensby, James Crenshaw, Paul Rutherford, and Dr. Tracey Anderson to serve on the hiring Committee for the Director of the Physical Plant position. Her recommendation was subsequently accepted by Dr. Albert Walker, BSC's President.

18. Dr. Steve Bourne served and the Chair of the Hearing Committee. At that time he was Dean of the School of Business at BSC. He has been a member of the faculty at BSC for 35 years.

19. Paul Rutherford is the Director of Purchasing for BSC. Ms. Johnson is Mr. Rutherford's immediate supervisor.

20. Dr. Tracey Anderson is the Director of Institutional Research and Effectiveness, reporting directly to the President of BSC.

21. James Crenshaw is employed by BSC as a Night Supervisor for the custodial personnel. He has been employed by BSC for more than 23 years. Mr. Crenshaw's position ordinarily reports to the Physical Plant Director.

22. Roger Owensby is an Assistant Professor of Mining, Energy, and Technology as BSC. He has been on BSC's faculty got 36 years.

23.     After the Hiring Committee was appointed, Mr. Harrison, who was one of the applicants for the position, confronted Ms. Johnson about its membership, because he believed that the members were selected to keep him from being selected to fill the position. Mr. Harrison told Ms. Johnson that he would initiate legal actions if "Frosty" [Grievant] was selected over him. Ms. Johnson told Mr. Harrison that she did not anticipate this happening.

24.     Ms. Johnson attended the initial meeting of the Hiring Committee to provide some background information on the duties and responsibilities of the Director of the Physical Plant. She did not attend any further meeting of the Hiring Committee or participate in the evaluation of the individual applications.

25.     The Hiring Committee had access to all of the information each applicant submitted with his or her application.

26.     Grievant was 1 of 14 individuals who timely filed applications for the Director of the Physical Plant position, and who were at least minimally qualified to hold that position.

27.     Eddie Rader served as the Facilities Management Supervisor at Redford University in Virginia from 1992 to 2010. He completed a bachelor's degree in organizational management and development at BSC in 2003. He previously obtained an associate's degree in business management from Wytheville Community College in 1970. Mr. Rader was one of four applicants selected to be interviewed by the hiring committee but was not recommended for the position at issue.

28.     Todd Day was the Town Manager for Bluefield, West Virginia at the time of his application for the Director of the Physical Plant vacancy at BSC. Mr. Day has previously served for seven years as the Town Engineer and Public Works Director. He holds an

5

associate's degree in civil engineering technology from Central Virginia Community College, a bachelor's degree in civil engineering technology from Bluefield State College, and a master's degree in business administration (MBA) from King College. Mr. Day was selected to be interviewed by the hiring committee but was not recommended for the position at issue.

29. At the time of his application for the position of Physical Plant Director, Brian Bales was employed as the Facilities Manager for Carilion Tazewell Community Hospital, a 56-bed acute care medical facility in Tazewell, Virginia. Mr. Bales previously worked as a service technician maintaining facilities and repairing mechanical equipment for a national food chain. He had a diploma from Virginia Highlands Community College in HVAC/Electrical, but did not hold any college degree. In accordance with standard practice. Mr. Bale's "related experience" exceeding 20 years in was substituted for the required bachelor's degree.

30. Mr. Bales was one of the four applicants selected by the Hiring Committee to be offered an interview.

31. At the time of his application, Mr. Harrison had 36 years of experience in management positions and 30 years of maintenance-related experience. He was the full-time director of BSC's Physical Plant from 1991 to 2007. Mr. Harrison had a Regent's bachelor's degree from BSC. Mr. Harrison was one of the applicants selected by the Hiring committee for an interview.

32. Mr. Crenshaw recalled reviewing the applications in an effort to find the "most qualified" applicant, although he only remembered looking at approximately three applications.

6

33. Mr. Rutherford recalled that the Hiring Committee reviewed and discussed each applicant, in an effort to narrow down the list of candidates to those who were best qualified to serve as maintenance director. Grievant's application was not ranked in the top 50% of the 14 applications considered by the Hiring Committee.

34. The Hiring Committee did not select Grievant for an interview or recommend Grievant for the position, noting that he had not supervised a large number of people, and was only minimally qualified with no documentation of contractor supervision.

35. Ronald Fore has been employed by BSC for approximately 28 years. He is currently employed as a Grounds Foreman and Electrician within the Physical Plant.

36. Steve Odle is employed as a Trades Worked Lead in the BSC Physical Plant. He has been employed by BSC for approximately 24 years.

37. Mr. Odle opined that he might be the only person in the Physical Plant who has acknowledged that he could work for Grievant as Physical Plant Director. Mr. Odle related that he had expressed this opinion to Ms. Johnson at some unspecified time before Mr. Bales was selected as the new Physical Plant Director.

38. The applicants who were interviewed by the Committee were also interviewed by full-time Physical Plant employees who were permitted to ask questions of the applicants and then complete a written survey regarding the applicants. The survey pertained only to the four finalists. Mr. Fore and Mr. Odle participated in this interview and survey process.

39. The Hiring Committee recommended the selection of Brian Bales as the new Director of BSC's Physical Plant. Ms. Johnson concurred with the Committee's recommendation that Mr. Bales be hired as the Physical Plant Director.

7

40. Mr. Harrison supervised Grievant for five years as a Painter and Trades Worker. In Mr. Harrison's opinion, Grievant was "very qualified" for the Physical Plant Director position.

41. The successful applicant, Mr. Bales, left BSC in March 2013 to take another position with another employer. The position of Physical Plant Director has not been posted since Mr. Bales' departure.

42. A few months after Mr. Bales' departure, the BSC Board of Governors converted the Physical Plant Director position to a non-classified staff position. Thus, the next person to hold this position will be employed at the will and pleasure of BSC's, President.

43. Grievant filed the grievance at issue on December 15, 2010. Following a Level One grievance hearing on March 16, 2011, BSC denied the grievance on April 20, 2011.

44. Grievant appealed to Level Two of the grievance procedure on April 25, 2011. After mediation was completed at Level Two on September 19, 2011, Grievant appealed to Level Three on September 23, 2011.

45. Thereafter, on January 2, 2012, Brian Bales requested to intervene on the grievance. On March 13, 2012, Mr. Bales was granted Intervenor status.

46. Following a series of continuances, each of which was granted for good cause, a Level Three hearings was held before ALJ Lewis Brewer on March 20, and September 10, 2013, in Beckley, West Virginia.

47. The matter became mature for decision by the ALJ on January 14, 2014, and a decision was signed by the ALJ on January 29, 2014 wherein the grievance was denied.

8

48.    Grievant appealed this decision to this Court in a petition filed on February 28, 2014.

## STANDARD OF REVIEW

West Virginia Code § 6C-2-5(b) provides the grounds upon which a decision by the Board may be reviewed for error by a Circuit Court. Specifically, West Virginia Code § 6C-2-5(b) provides that:

> A party may appeal the decision of the administrative law judge on the grounds that the decision:
> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's statutory authority;
> (3) Is the result of fraud or deceit;
> (4) Is clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

The Court shall "review the entire record that was before the administrative law judge." See West Virginia Code § 6C-2-5(c).

A circuit court must show deference to the Board's findings of fact. *See* Syl. pt. 2, *Maikotter v. University of West Virginia Bd. of Trustees/West Virginia University*, 206 W.Va. 691, 692, 527 S.E.2d 802, 803 (1999) (emphasis added). *See also Muscatell v. Cline*, 474 S.E.2d 518, 525 (1996).

A final order of an administrative law judge of the West Virginia Public Employees Grievance Board, based upon findings of fact, should not be reversed unless clearly wrong. *See generally*, Syl. Pt. 1, *Randolph County Bd. of Educ. v. Scalia*, 182 W.Va. 289, 387 S.E.2d 524 (1989).[1] With respect to the grievance proceedings below, the Petitioner bore the burden of

---

[1] See also Syl. Pt. 1, Martin v. Randolph County Board of Education, 195 W.Va. 297, 465 S.E.2d 399 (1995); Syl. Pt. 1, Bolyard v. Kanawha County Board of Education, 194 W.Va. 134, 459 S.E.2d 411 (1995); Syl. Pt. 1, Ohio County Board of Education v. Hopkins, 193 W.Va. 600, 457 S.E.2d 537 (1995); Syl. Pt. 3, Lucion v.

9

proof. *See* Procedural Rule of the W. Va. Public Employees Grievance Bd., 156 C.S.R. 1 § 3 (2008).

## DISCUSSION

Because this grievance does not involve a disciplinary matter, Grievant has the burden of proving his grievance by a preponderance of the evidence. Procedural Rule of the W. Va. Public Employee's Grievance Bd., 156 C.S.R. 1 § 3 (2008); *Burkhart v. Ins. Comm'n*, Docket No. 2010-1303-DOR (Dec. 7, 2011); *Howell v. W. Va. Dep't of Health & Human Res.*, Docket No. 89-DHS-72 (Nov 29, 1990). "The preponderance standard generally requires proof that a reasonable person would accept as sufficient that a contested fact is more likely true than not." *Leighliter v. W.Va Dep't of Health & Human Res.*, Docket No. 92-HHR-486 (May 17, 1993). Where evidence equally supports both sides, Grievant has not met his burden. *Id.*

Grievant is asserting that he was denied the opportunity to interview for (and, ultimately, be selected to) the position of Physical Plant Director at BSC in retaliation for filing multiple grievances and pursuing legal actions relating to some of those grievances, against his employer. W. Va. Code § 6C-2-2(o) defines "reprisal" as "the retaliation of an employer toward a grievant, witness, representative, or any other participant in the grievance procedure either for an alleged injury itself or for any lawful attempt to redress it." In general, a grievant alleging reprisal or retaliation in violation of W. Va. Code § 6C-2-2(o), in order to establish a *prima facie* case, must establish by a preponderance of the evidence:

> 1. That he or she was engages in activity protected by the statute (*e.g.*, filing a grievance);

---

McDowell County Board of Education, 191 W.Va. 399, 446 S.E.2d 487 (1994); Syl. Pt. 1, Department of Natural Resources v. Myers, 191 W.Va. 72, 443 S.E.2d 229 (1994); Syl. Pt. 1, Department of Health v. Blankenship, 189 W.Va. 342, 431 S.E.2d 681 (1993); Syl. Pt. 3, Butcher v. Gilmer County Board of Education, 189 W.Va. 253, 429 S.E.2d 903 (1993).

10

2. That his employer's official or agent had actual or constructive knowledge that the employee engaged in the protected activity;

3. That, thereafter, an adverse employment action was taken by the employer; and

4. That the adverse action was the result of retaliatory motivation or the adverse action followed the employee's protected activity within such a period of time that retaliatory motive can be inferred.

*Coddington v. W. Va. Dep't of Health & Human Res.*, Docker Nos. 93-HHR-265-67 (May 19, 1994); *Graley v. W. Va. Parkways Economic Dev. & Tourism Auth.*, Docket No. 91-PEDTA-225 (Dec. 23, 1991). *See generally, Frank's Shoe Store v. W. Va. Human Rights Comm'n*, 179 W. Va. 53, 365 S.E.2d 251 (1986). Once a *prima facie* case of retaliation has been established, the inquiry shifts to determining whether the employer has shown legitimate, non-retaliatory reasons for its actions. *Graley, supra. See Mace v. Pizza Hut, Inc.*, 180 W. Va. 469, 377 S.E.2d 461 (1989).

Grievant presented preponderant evidence that he initiated multiple grievances alleging various acts of misfeasance and malfeasance by BSC and its agents and administrators, several of which he has pursued successfully in court. It was also established that Ms. Johnson, who appointed the Hiring Committee that made the decision not to interview Grievant for the Director of Physical Plant vacancy, was aware of Grievant's extensive involvement in the grievance process. Further, the decision not to interview Grievant for the Director vacancy, thereby effectively assuring his non-selection, constitutes an adverse employment decision. *See Volovsek V. Wisconsin Dep't of Agriculture, Trade and Consumer Prot.*, 344 F.3d 680, 688 (7th Cir. 2003); *Nyguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000); *McCabe v. Sharrett*, 12 F.3d. 1558, 1563 (11th Cir. 1994). Finally, the decision to exclude Grievant from the list of candidates to be interviewed was made subsequent to Grievant's involvement in multiple grievances, including a grievance that resulted in an order to post the Physical Plant Director's position, and

11

took place within a times frame that creates an inference that Grievant's protected activity may have been a motivating factor in this decision. Thus, Grievant has established a *prima facie* case of relation, shifting the inquiry to a determination of whether BSC established legitimate, non-retaliatory reasons for its actions. *See Frank's Shoe Store, supra; Graley, supra. See generally, McDonnell Douglas Corp. v Green*, 411 U.S 792 (1972). Grievant is also permitted to present evidence to demonstrate that the retaliatory reasons for BSC's decisions are unworthy of credence or involve nothing more than pretext to facilitate retaliation. *Bennett v. W. Va. Dep't of Health & Human Resources*, Docket No. 98-HHR-378 (Apr. 27, 1999). *See Connor v. Barbour County Bd. of Educ.*, 200 W. Va. 405, 489 S.E.2d 787 (1997); *W. Va. Dep't of Natural Res. v. Myers*, 191 W. Va. 72, 443 S.E.2d 229 (1994).

The five-member Hiring Committee appointed to screen the applicants reviewed the applications of 14 applicants who had been found to meet the minimum qualifications for the Physical Plant Director's position. Grievant's application was included in this pool of 14 eligible candidates. Grievant application might have been excluded from even this initial consideration but for the fact that BSC's Human Resources Director at the time, Christina Brogdon, notified Grievant that his application was deficient, giving him an opportunity to provide the required documentation. The gesture appears inconsistent with Grievant's position that the BSC administration was generally focused on thwarting his advancement.

The former Physical Plant Director, Clyde Harrison, testified that he had served on various hiring committees at BSC over the years, and he believed M.s Johnson selected the members of the Hiring Committee to select a new Physical Plant Director in an effort to exclude him from being selected. Unlike Grievant, there was no evidence that Mr. Harrison had participated in the grievance procedure as a grievant or witness prior to the appointment of the

12

Hiring Committee at issue here. Thus, the reason for this purported manipulation of the procedure by Ms. Johnson is inconsistent with Grievant's theory that he was excluded from consideration in retaliation for his grievance activity, and does not support Grievant's claims in this matter.

It is also relevant that the Hiring Committee granted an interview to Mr. Harrison, an applicant who clearly had more extensive supervisory experience in a physical plant or similar setting than Grievant. Mr. Harrison's exclusion from the interview process would have raised a red flag that the Hiring Committee was not genuinely interested in identifying the most capable applicant for the position. However, the fact that the Committee included Mr. Harrison, despite his contention that Ms. Johnson did not want to see him return to his old position, does nothing to advance Grievant's contention that Ms. Johnson manipulated the process to obtain a result that excluded him from consideration.

The Committee made an independent decision regarding which applicants they would interview for the Physical Plant Director position. Although the Committee apparently had discretion to interview all applicants who met the minimum qualifications for the position, it was not improper, or out of the ordinary, for the Committee to screen applications and limit interview opportunities to those particular applicants whose qualifications most closely matched attributes they were seeking in a Physical Plant Director.

Further, because the Physical Plant supports all aspects of BSC's educational institution, it was reasonable to include a cross-section of the College among the five persons who served on the Committee. There was no credible evidence that any of the appointed Committee members were instructed to eliminate or otherwise exclude Grievant from the competition, or that they

13

were ever provided any information about Grievant beyond his job application and benign generic guidance regarding the selection process.

Grievant asserts that despite the lack of direct evidence that Ms. Johnson improperly influenced the outcome of the selection process, the work of the Committee should be considered inherently "suspect" because two members of the Committee, Mr. Crenshaw and Mr. Rutherford, work within her chain of command at BSC. Further, Grievant's reputation within the administration as an unwanted outcast was allegedly so widespread they would have already been aware of Ms. Johnson's desire to avoid giving this important position to Grievant.

Mr. Crenshaw acknowledged in his testimony that he had "heard through the grapevine" that Grievant had filed one or more grievances in the past, but this knowledge was not attributed to Ms. Johnson or anyone else above Mr. Crenshaw in the BSC administration. given the amount of grievance activity related to Grievant, and the fact that he worked in the Physical Plant when these activities began, had Mr. Crenshaw claimed no knowledge of Grievant's grievance activity, his testimony would not have been credible. In any event, Mr. Crenshaw was generally credible, although confuse about the details of the procedures followed by the Committee. Mr. Crenshaw's testimony was clear that his only concern was to find the "best person for the job" in regard to filling the position of Physical Plant Director, and he related no event or activity that suggested anyone else on the Committee was focused on anything beyond that same goal.

Each of the other four members of the Hiring Committee who testified at the Level Three hearing echoes Mr. Crenshaw's testimony that their focus was upon finding the applicant who would do the best job for BSC in the position of Director of the Physical Plant. The Committee's Chair, Dr. Bourne, explained that the Committee sought someone with experience supervising a significant number of employees in a maintenance operation for a similar activity, such a college,

14

hospital, or municipality. It was the Committer's determination that the four applicants selected for interview met these criteria while Grievant did not. Not only had Grievant never held a full-time supervisory position with a comparable span of responsibility, Grievant's experience as BSC as a full-time employee in the Physical Plant had stopped 10 years earlier. This testimony was credible and consistent, while providing a rational basis for the course of action the Committee followed.

Grievant's theory that his reputation for filing grievances influenced the Committee might nonetheless bear fruit if the rationale for the decision reached by the Committee did not comport with the facts available at the time the decision was made, or the outcome of the Committee's selection process was simply implausible, given relevant circumstances. *See Tucker v. Div. of Rehab. Serv.*, Docket No. 2013-1046-DEA (Oct. 31, 2013). *See generally, Bedford County Memorial Hosp. v. Health and Human Serv.*, 769 F.2d 1017, 1022 (4th Cir. 1985).

Although Grievant was "qualified" to fill the Physical Plant Director's position, he was 1 of 14 applicants who attained that status. There remains a broad chasm between being qualified and being the best applicant to fill a vacancy, or even, as here, one of the four applicants whose credentials established them as warranting an interview for the job. The Grievance Board's role in reviewing decision that are intrinsic to the selection process is essentially limited to considering the legal sufficiency of the procedures followed, and does not involve second-guessing the decisions of the managers who reached a particular conclusion based on the information available at the time the decision was made. *See King v. Dep't of Health and Human Res.*, Docket No. 2011-0527-DHHR (Oct. 12, 2012); *Stover v. Kanawha County Bd. of Educ.*, Docket No. 89-20-75 (June 26, 1989); *Ellis v. W. Va. Dep't of Transp.*, Docket No. 98-DMV-036 (1998). Thus, an agency's decision as to who is the most qualified applicant will be upheld

15

unless shown by the grievant to be arbitrary and capricious or clearly wrong. *Ashley v. W. Va. Dep't of Health and Human Res.*, Docket No. 94-HHR-070 (June 2, 1995); *Sloan v. West Virginia Univ.*, Docket No. BOR-88-109 (Sept. 30, 1988).

The "clearly wrong" and "arbitrary and capricious" standards of review are differential ones that presume an agency's actions are valid as long as the decision is supported by substantial evidence of by a rational basis. *Adkins v. W. Va. Dep't of Educ.*, 210 W. Va. 105, 556 S.E.2d 72 (2001) (citing *In Re Queen,* 196 W. Va. 442, 473 S.E.2d 483 (1986)). "while a searching inquiry into the facts is required to determine if an action was arbitrary and capricious, the scope of review is narrow, and an administrative law judge may not substitute [his or her] judgment for that of the employer." *Trimboli v. Dep't of Health & Human Res.*, Docket No. 93-HHR-322 (June 27, 1987).

In order to obtain relief on the basis of an alleged error in a promotion actions, a grievant must establish a significant flaw in the selection process sufficient to suggest that the outcome might reasonable have been different if the selection had been conducted correctly. *Della Mae v. W. Va. Div. of Natural Res.*, Docket No. 98-DNR-204 (Feb 26, 1999). *See Hoffman v. Mingo County Bd. of Educ.*, Docket No. 97-29-266 (June 15, 1998). Grievant's concerns about one Committee member reviewing only 2 or 3 applications while the other member recalled reviewing all 14 application represents nothing more that quibbling over the ultimate decision: that the four applicants who were selected for interviews over Grievant had more documented supervisory experience involving a larger span of control.

Even if one member of the Hiring Committee deviated from the established process for evaluation applications by failing to personally read each of the 14 applications considered by the Committee, it was not shown that this deficiency violated any applicable law, rule, or

16

regulation, or that is was contrary to any established requirement, how Grievant was harmed by this error, or that the outcome of the hiring process would have changed had Mr. Crenshaw reviewed all of the applications. *See Della Mae, supra.* Because the Hiring Committee achieved a consensus that 4 of the 14 applicants were worthy of an interview, and no member of the Committee was concerned about Grievant's exclusion from thee stablished pool of applicants to be interviewed, there is no basis to conclude that this deviation constituted harmful error that corrupted the selection process. *See Tucker, supra. See generally, Parker v. Defense Logistics Agency*, 1 M.S.P.B. 489 (1980).

There was evidence presented at the hearing below that indicated that the position of Physical Plant Director was later converted from a classified staff position to a non-classified staff position several months after Mr. Bales' departed BSC. Grievant suggests that this action was taken to discourage him from seeking or accepting the position, and provides additional support for his contention that he has been the victim of retaliation in regard to filling this vacancy. However, the witnesses with knowledge of the process indicated that the only reason discussed for making this change was to allow BSC to pay an increased salary to the person who serves as its Physical Plant Director, and to prevent unnecessary turnover in this key position. Although Fred Hardee, a member of the Advisory Council representing classified employees, noted his disagreement with this change, he did not dispute the employer's reasons given at the time the change was made. Thus, Grievant's assertion that this position was converted to a non-classified position to exclude him from holding the job constitutes nothing more than speculation, and does not serve to demonstrate that the reasons given by the Hiring Committee for not including him among the applicants who received an interview for the position were pretextual or unworthy of belief.

17

## CONCLUSIONS

Grievant's allegation that the ALJ erred when he "failed to consider evidence of actions on the part of Bluefield State College Administration on other occasions specifically intended to thwart petitioner's pursuit of other positions" is not substantiated. The issue at hand is the selection of an applicant for the position of Physical Plant Director, and the standards by which this issue is to be decided are clear, and did not require than the ALJ to reference the aforementioned evidence in his decision. As stated above, and below, Grievant did, in fact, establish a *prima facie* case of retaliation. The inquiry was then shifted to determining whether the employer has shown legitimate, non-retaliatory reasons for its actions. This referenced evidence was and is not relevant to the issue of whether Grievant's credentials were equal to those of the applicants selected for an interview. Grievant was not as qualified as the applicants selected for interview. Additionally, as noted by the ALJ, there is no credible evidence in the record that any of the members of the Hiring Committee were aware of the alleged bias/opinions/statements/actions that the aforementioned evidence allegedly supports, or that the reasons for the decision were pretextual.

Grievant's allegation that the ALJ "failed to correctly and adequately credit and consider the work experience of the intervenor Brian Bales, the successful applicant for the position at issue" is unsupported. Though the ALJ's finding of fact may have lacked clarity, based upon the standard of review required of the Court and upon the record below, it was Mr. Bales 22 years of "related experience" and seven years of supervisory experience that were considered as a substitute for the requisite bachelor's degree. This practice of substituting a certain number of

18

years of experience of a bachelor's degree is standard practice and in this specific instance was disclosed within the actual posting for the position.

Finally and moreover, this Court finds that though Grievant may have established a *prima facie* case of retaliation, Grievant's case fails when the inquiry shifts into determining whether the employer has shown legitimate, non-retaliatory reasons for its actions. Based upon the forgoing facts and discussion, Respondent's decision regarding which applicant to interview for the position of Director of Physical Plant was based on legitimate, non-retaliatory reasons relating to the relative qualifications of the applicants, and was not shown to be arbitrary and capricious, clearly wrong, inherently unreasonable, or a mere pretext for retaliation against grievant. Grievant has failed to establish that Respondent's articulated reasons to justify its failure or refusal to select him from an interview in regard to his application to fill the position of BSC's Physical Plant Director were merely a pretest for prohibited retaliation. *See Conner v. Barbour County Bd. of Educ.*, 200 W. Va. 405, 489 S.E.2d 787 (1997); *W. Va. Dep't of Natural Res. v. Myers*, 191 W. Va. 72, 443 S.E.2d 229 (1994). Therefore, the ALJ did not err in finding that Grievant had not been retaliated against, in finding that the actions of Respondent were not arbitrary and capricious or inherently unreasonable, or in denying Grievant's grievance.

## RULING

After carefully considering the Petitioner's petition, the record, Petitioner's brief, Respondent's response, and the relevant law, the Court hereby **AFFIRMS** the decision of the Administrative Law Judge below. This matter is hereby **DISMISSED** and **STRICKEN** from the docket of the Circuit Court.

The Circuit Clerk shall send certified copies of this Final Order to all counsel of record:

19

Chriceous Reynolds, Secretary
WV Public Employees Grievance
Board
1596 Kanawha Blvd., East
Charleston, WV 25311

Lewis G. Brewer
WV Public Employees Grievance
Board
1596 Kanawha Boulevard, East
Charleston, West Virginia 25311

Kristi A. McWhirter, Esquire
Assistant Attorney General
Glenville State College Box 1916
200 High Street
Glenville, WV 26351

Derrick W. Lefler, Esquire
Gibson, Lefler, & Associates
1345 Mercer Street
Princeton, WV 24740

Enter this Order this  24  day of July, 2014.

Tod J. Kaufman, Circuit Court Judge for
Kanawha County

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, SS
I, CATHY S. GATSON CLERK OF CIRCUIT COURT OF SAID COUNTY
AND IN SAID STATE, DO HEREBY CERTIFY THAT THE FOREGOING
IS A TRUE COPY FROM THE RECORDS OF SAID COURT
GIVEN UNDER MY HAND AND SEAL OF SAID COURT THIS 28th
DAY OF July 2014
CATHY N. GATSON CLERK
CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

20